# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONNIE HAWLEY, | § |
| | § |
| *Plaintiff,* | § |
| | § |
| *versus* | § CIVIL ACTION NO. 3:13-397 |
| | § |
| CAROLYN W. COLVIN, | § |
| Acting Commissioner of | § |
| Social Security, | § |
| | § |
| *Defendant.* | § |

## REPORT AND RECOMMENDATION

Connie Hawley ("Hawley") seeks review of an adverse decision on her application for disability-based benefits under the Social Security Act.

## I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Reviewing courts also must take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II.  Background

Hawley applied for supplemental security income benefits,[1] alleging disability due to degenerative disc disease, bulging discs, lower back pain, and a learning disability, commencing November 9, 2009. (T. 119-24, 153). After an evidentiary hearing, administrative law judge Marie Greener ("ALJ Greener"), denied Hawley's application. (T. 10-19, 25-44). The Appeals Council declined review; Hawley then instituted this proceeding.

## III.  Commissioner's Decision

ALJ Greener utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act.[2] She found that Hawley suffers from mental and physical conditions that, separately and collectively, constitute "severe impairments." (T. 12). These

---

[1]   Supplemental Security Income benefits provide an additional resource to assure that disabled individuals' income does not fall below the poverty line. Applicants seeking benefits under this statutory provision must prove "disability" within the meaning of the Social Security Act, which defines disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 1382c(a)(3)(A).

[2]   The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

impairments reduce Hawley's "residual functional capacity"[3] such that she can perform only unskilled work at the light exertional level.[4] (T. 14).

At Step 4, ALJ Greener found that Hawley's residual functional capacity allows her to perform her past relevant work as a parking lot attendant as such work is generally performed, and also as Hawley actually performed it. (T. 17-18). Consequently, Hawley was not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv).

Alternatively, ALJ Greener consulted Medical–Vocational Guidelines commonly referred to as "the grids."[5] (T. 18). She concluded that a finding of "not disabled" also was appropriate under the framework of section 202.17. (*Id.*).

Hawley's application was denied on the basis that her impairments do not prevent her performance of substantial gainful employment. (T. 18-19).

## IV.   Points of Alleged Error

Hawley argues that ALJ Greener erred as follows:

---

[3]     "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999); *see also* 20 C.F.R. § 416.945(a)(3).

[4]     ALJ Greener's complete "residual functional capacity" finding was:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following limitations: the claimant is capable of following only simple instructions and directions, and carrying out simple tasks, and maintaining a simple schedule.

(T. 14).

[5]     The Medical Vocational Guidelines are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. They "take into account a claimant's RFC, as well as [his] age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (summary order) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

A. ALJ failed to properly assess [Hawley's] residual functional capacity;

    1. Due to her inability to stand for prolonged periods of time, [Hawley] cannot perform light work;

    2. [Hawley] is unable to perform sedentary work;

    3. The ALJ violated the treating physician rule, and

    4. The ALJ improperly assessed [Hawley's] credibility.

B. The ALJ erroneously concluded that [Hawley] is capable of performing past relevant work;

C. The Commissioner failed to sustain the burden of demonstrating that there is other work that [Hawley] can perform; and

D. Failure to develop the record.

(Dkt. No. 13, pp. 2, 9-22).

## V. Residual Functional Capacity

Hawley's first point advocates that ALJ Greener's core predicate finding of residual functional capacity is invalid because ALJ Greener erroneously assessed credibility of medical opinions and Hawley's subjective testimony. Such argument borders on futility because reviewing courts are loathe to second-guess and overturn credibility choices made by administrative adjudicators.[6] Reviewing courts, however, cannot abdicate their statutory duty to determine whether correct principles of law were applied and whether challenged decisions are supported by substantial evidence.

---

[6] *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.' "); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness."). Indeed, nothing in social security jurisprudence is more firmly established than that it is the prerogative of the Commissioner, not reviewing courts, to resolve evidentiary conflicts and to appraise credibility of witnesses, including the claimant. *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

Buried among much briefing rhetoric and invitations to re-weigh evidence, Hawley raises at least some non-frivolous arguments that ALJ Greener disregarded governing principles of law when evaluating medical opinion evidence,[7] and made patently unreasonable findings when evaluating subjective testimony.[8] It is unnecessary, however, to plumb the depths of these arguments attacking ALJ Greener's various credibility choices because her residual functional capacity determination is infirm for another, more-evident reason not directly related to item-by-item credibility assessments.

ALJ Greener found that Hawley retains ability to perform a *full range* of work at the light exertional level. Every professional medical source expressing an opinion thereon stated, however, that Hawley is *limited* in ability to *sit* and

---

[7] Under a "treating physician rule" administrative law judges must give controlling weight to opinions of treating sources regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record. When controlling weight is not afforded, the degree of weight to be given such evidence is determined by applying six factors prescribed by regulation. *See* 20 C.F.R. § 416.927(c).

ALJ Greener did not mention Hawley's treating physicians by name; she did not afford their opinions controlling weight; she did not articulate reasons for rejecting their opinions; and she did not weight their opinions, one way or another, utilizing the six-factor analysis mandated by regulation. (T. 15). In short, she completely ignored treating source opinion.

[8] In discrediting Hawley, ALJ Greener stated that Hawley's "treating physician has never prescribed any narcotic pain medication." (T. 17). Even a cursory review of the medical records shows a history of prescribed narcotic pain medications such a Naprosyn, Motrin, Skelaxin, Flexeril, Celebrex, Mobic, and Darvocet. (T. 212, 223, 225, 234, 236, 241, 262, 263, 265, 416-17). Even if Hawley were not taking narcotic medications, such would not necessarily impugn her credibility. Record evidence demonstrates that Hawley has had financial difficulty affording prescribed medications and getting them covered by insurance (T. 236, 263), and she testified that she takes over-the-counter ibuprofen "because the they said I'm addicted to . . . the Vicodin that they give you." (T. 37).

*stand*.[9] Neither postural limitation was included in ALJ Greener's residual functional capacity assessment.

No treating, examining or consulting medical source suggested that Hawley is malingering or that her pain is not warranted based on her medical condition. Consequently, ALJ Greener could not permissibly disregard all professional medical opinion evidence, and form her own lay opinion that Hawley lacks these postural limitations.[10] *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Neither could she interpret Dr. Cadet's silence about functional limitations as evidence one way or another, *i.e.*, that there are or are not such limitations. *See Ray v. Astrue*, 649 F. Supp.2d 391, 405 (E.D. Pa. 2009).

---

[9] Professional medical source evidence before ALJ Greener came from three treating sources, a consultative examiner, and an independent medical examiner retained by Hawley. These sources opined as follows:

| | |
|---|---|
| Laurence U. Schenk, M.D. (Treating Orthopedist) | Reported that standing gives Hawley considerable back pain; opined that Hawley can work part time and only without any prolonged sitting or standing. (T. 212). |
| Erik Hiester, D.O. (Treating Orthopedist) | Limited Hawley to work involving ability to change position from standing to sitting frequently, as needed for pain. (T. 224-25). |
| Megdad Zaatreh, M.D. (Consulting Neurologist) | Based on examination, opined that Hawley is "moderately limited for standing, sitting, walking, bending, squatting, lifting, and climbing." (T. 313). |
| Lawrence Wiesner, D.O. (Forensic Examiner) | Based on examination, found Hawley moderately limited for walking, lifting, climbing, squatting, bending, and sitting, and that she needs to change positions frequently. (T. 358). Specifically, Hawley can stand and walk for less than 2 hours, changing positions every 10-15 minutes; sit about two hours, changing positions every twenty minutes. (T. 360 ). |
| Anne Marie Cadet, D.O. (Treating Orthopedist) | Treatment notes only. Did not provide an opinion regarding postural or other limitations. |

[10] No doctor, treating or consultative, provided an assessment of Hawley's ability to sit and/or stand for prolonged periods.

Absent some evidence to the contrary, the only proper inference to be made from such silence is that Dr. Cadet simply did not consider that issue. *Id.*

Were there a complete lack of any medical evidence indicating severity of Hawley's pain and postural limitations emanating therefrom, ALJ Greener might have relied on "what the record does not say." *Dumas v. Schweiker*, 712F.2d 1545, 1553 (2d Cir. 1983).[11] Here, however, the record is full of observations regarding Hawley's pain and postural limitations. *Dumas*, therefore, is inapposite.

A residual functional capacity assessment considers exertional and nonexertional limitations of a claimant. *Ortiz Torres v. Colvin*, 939 F. Supp.2d 172, 182 (N.D.N.Y. 2013) (citing SSR 96–8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *5 (SSA July 2, 1996)). Because ALJ Greener never addressed Hawley's limitations on sitting, standing and/or walking despite uncontroverted medical evidence reflecting such limitations, her residual functional capacity finding is not supported by substantial evidence. And, since both the subsequent Step 4 finding (ability to perform past relevant work) and Step 5 finding (ability to perform alternative, available work) are premised on that infirm assessment, ALJ Greener's adverse decision reflects clear administrative error.

## VI. Harmless Error Analysis

Congressional mandates requiring courts to review administrative decrees in light of "the rule of prejudicial error" and to disregard all administrative

---

[11] The Commissioner's brief argues that since Hawley's <u>medical treatment notes</u> fail to record impairments preventing her from performing a full range of light work, ALJ Greener could rely on "what the record does not say" when finding that Hawley can perform a full range of light work. (Dkt. No. 14, p. 10).

errors and defects not affecting "substantial rights" refer to what modern jurisprudence calls "harmless error doctrine." *See Shinseki v. Sanders*, 556 U.S. 396, 406-08 (2009). Under this doctrine, a reviewing court must reverse and remand when an administrative law judge errs unless, as a matter of law, the result was not affected by the error. *See NLRB v. Enterprise Assoc.*, 429 U.S. 507, 522 n. 9 (1977). In other words, administrative legal error is harmless when the same result would have been reached had the error not occurred. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("[W]here application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.").

Adverse administrative decisions unsupported by substantial evidence clearly affect substantial rights.[12] Both the Administrative Procedure Act and the Social Security Act give proponents of administrative actions statutory rights to orders supported by substantial evidence. *See* 5 U.S.C. § 706(d); 42 U.S.C. § 405(g). Here, moreover, there are specific and discrete reasons why a reviewing court cannot conclude that the same result would have occurred absent the error identified in the preceding section. Light work "requires a good deal of walking or standing, or . . .sitting most of the time with some pushing and pulling of arm or leg controls" 20 C.F.R. § 416.967(b). To perform a full range, one must have ability to stand or walk, off and on, for a total of approximately six hours of an eight-hour workday. SSR 83–10, Titles II and XVI: Determining Capability To Do Other Work—The Medical—Vocational Rules of Appendix 2, 1983

---

[12]    The Constitution condemns arbitrary and capricious exercise of government power, and, for over a century, American jurisprudence has recognized that administrative facts not fairly supported by evidence are arbitrary and baseless. *Interstate Commerce Comm'n v. Louisville & Nashville R.R. Co.*, 227 U.S. 88 (1913); *see also Rice v. Shalala*, No. 93-1305, 1 F.3d 1234 (Table), 1993 WL 309631, at *5 n. 6 (4th Cir. Aug. 16, 1993) (acknowledging that substantive due process rights are implicated by argument suggesting that Commissioner's decision was not supported by substantial evidence).

WL 31251, at *5–6 (SSA 1983).  Sedentary work (which is subsumed in residual functional capacity for light work[13]) generally requires sitting for "approximately 6 hours of an 8-hour workday." SSR 83–10, 1983 WL 31251, at *5.  Until the nature and extent of Hawley's postural limitations are assessed and articulated in a valid residual functional capacity finding, a reviewing court cannot confidently conclude that substantial evidence would support findings that Hawley can perform her past relevant work or alternative, available work.

## VII.   Recommendation

The Commissioner's decision denying disability benefits should be REVERSED and the case REMANDED pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings.[14]

## VIII.   Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

---

[13]      *See* 20 C.F.R. § 416.967(a)-(b); *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("A person who is deemed able to perform light work is also capable of doing sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

[14]      Reversal should not be interpreted as an indication that the court thinks Hawley is disabled within the meaning of the Social Security Act.  Indeed, much evidence in the record before the court suggests she is not.  When correct principles of law are applied, and substantial evidence is produced, ALJ Greener or a successor administrative law judge may well reach the same decision as was reviewed here.  Nonetheless, application of correct principles of law and production of substantial evidence are more reliable and effective **means to** winnow chaff from wheat than *ad hoc* shortcuts such as lay interpretations of medical evidence.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___8___ day of _____May_____ 2014.

_Earl S. Hines_
Earl S. Hines
United States Magistrate Judge